STANLEY *v.* GRIMES.

(Division B. May 19, 1930.

[128 So. 324. No. 28564.]

(1)

Robt. B. Ricketts, of Jackson, for appellant.

Green, Green & Potter, of Jackson, for appellee.

**Ethridge, P. J.,** delivered the opinion of the court.

Mrs. C. R. Grimes was plaintiff in the court below, and brought suit against H. F. Stanley for commissions upon sale of a piece of property in the city of Jackson by Stanley to Mrs. Heard and her daughters, alleging that plaintiff procured a purchaser, ready, able, and willing to buy the property at and for the sum of eleven thousand five hundred dollars; that the defendant, H. F. Stanley, had listed the property with her for eleven thousand five hundred dollars, and that she had interested purchasers

in the property, and without the knowledge or consent of the defendant, sold the property to the prospective purchasers, for the sum of eleven thousand dollars; and that Stanley failed and refused to pay her the five per cent commission reasonable and customary in such cases, and demanded the sum of five hundred fifty dollars.

The defendant pleaded the general issue. At the conclusion of the evidence, the defendant asked for a peremptory instruction, which was refused. Also other instructions were refused, and complaint is made of several instructions given for the plaintiff.

We have carefully considered the evidence in the case, and have reached the conclusion that the plaintiff did not prove her case entitling her to recover a commission. She testified, in substance, that she had known Stanley for three or four years, and that shortly before the transaction involved, she had noticed that Stanley was building a residence at 2023 West Capitol Street; that the first time she passed there she knew it was Stanley's place, and that he had listed his apartment with her prior thereto, and that she asked him if he was building this house for sale or to live in, and he said: "I am going to build a good house to sell, and if I don't sell it, I will live in it." That she usually watched the construction of houses, and that she showed this particular house quite a few times before it was ever occupied; that she asked Stanley what he wanted for this property, and he said he did not know, but around eleven thousand dollars, between eleven and twelve thousand dollars; that after the house was finished she called Stanley and asked him if the house was sold, and he said: "No, if we don't sell it we will move into it." She asked him what he wanted for it, and he said, eleven thousand dollars net," and that she worked on it with that in view; that she made inquiries and found out that Stanley was living in the house, and that he had told other agents as well as herself that he was building a good house, and in case he did not sell, he would live in it; and that she had these clients,

the Heards, from Yazoo county. That in December, 1928, the Heards came to Jackson, and that she showed them all though North Jackson, and they decided to locate in West Jackson on Capitol street if they could get a place, and that she showed them some houses out there, and when they passed the Stanley place they said, "We like this house." They then looked at some other houses in that section, but they stated they liked the Stanley place, and she told them she knew the owner and that it was a good house; that she went to the door of the Stanley house in company with the Heards and knocked, but no one was at home, so she opened the door, which was not locked, and went in, but nobody was in the house, so she did not completely show them over the house, but they said they liked the place, and wanted to buy it. That she then got in touch with Stanley and asked him over the 'phone if he had sold the house or moved into it, and he said: "We are living in it, Mrs. Grimes, but it is still on the market for sale." That she then informed him that she had carried customers there but did not like to go over the house in the owner's absence, and asked him to give her his best price, and he said, "eleven thousand dollars net," and she said that she had better put it at eleven thousand five hundred, asking him if he would be interested in some Yazoo county property, to which he replied, "No." She then stated that her clients had money and would be back in January. She called on Mrs. Heard at the hotel and gave her this information, and Mrs. Heard said she would not pay eleven thousand dollars. She also testified that Mrs. Heard did not call her any more, but that she called Mrs. Heard's daughter because she felt they were interested in the place, but that the daughter avoided talking to her; that she saw the notice of the transfer in the paper after the Heards purchased the property from Stanley; and that she called upon Stanley for her commission and he refused to pay it.

It appears, therefore, from the plaintiff's own testimony, that the terms offered her to sell the place were eleven thousand dollars net to Stanley. She does not testify, and there is no testimony to the effect that she produced a purchaser ready, able, and willing to buy at eleven thousand five hundred dollars, and there is nothing in the record to show any probability of any purchaser who would have paid such a price. She does not show that she was given the exclusive right to sell the place. In fact, according to her own testimony, she was never offered any sum above eleven thousand dollars, and, according to her own testimony, she must have procured a purchaser willing to pay something more than eleven thousand dollars to entitle her to any commission.

The purchaser, Mrs. Heard, testified emphatically that she rejected the offer of the house at eleven thousand five hundred dollars, and told Mrs. Grimes that the deal was all off, and this evidence is not disputed.

Stanley and Mrs. Grimes both testified to the same effect as to the understanding between them, except that Stanley denies that she ever told him who the buyers were, while she claimed to have disclosed their names to him.

In order to recover a commission, there must be a contract, and where a contract is made, the agent must have produced a buyer in accordance with the contract, willing and able to buy at the price, or on the terms, named in the contract. If there had been any understanding that Stanley would not sell the property, or that the plaintiff, Mrs. Grimes, would have the exclusive right to sell it, and that the price she fixed would be abided by, and if, after that, the owner dealt with the proposed customers, knowing them to be such, at a less price than agreed upon with the agent, he would be liable to the agent for the commission; but, in the case before us, there was no agreement to pay the customary commission, but merely to give the agent anything over eleven thousand dollars that she could secure by a sale of the property.

There is nothing to show that Stanley interfered with the negotiations while they were pending, or induced the buyers to abandon the agent and purchase from him in order to save the commission, or defeat the plaintiff's right thereto.

It follows, therefore, that the peremptory instruction should have been given for the defendant, and the judgment will be reversed, and judgment rendered here for the appellant.

Reversed, and judgment here for the appellant.